IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAVID BROOKS,                                          No. 3:19-cv-02085-HZ

                        Plaintiff,                    OPINION & ORDER

        v.

DAVID CLYNE, in his individual and
official capacity, ANNA LEE, in her
individual and official capacity, TRUMAN
STONE, in his individual and official
capacity, JOE HANNAN, in his individual
and official capacity, TAMARA JONES, in
her individual capacity, CITY OF
NEWBERG, a municipal corporation,
CITYCOUNTY INSURANCE COMPANY,
an Oregon corporation,

                        Defendants.


Daniel Thenell
Emerson Lenon
Thennell Law Group, LLC
12909 SW 68th Parkway, Suite 209
Portland, OR 97223

        Attorneys for Plaintiff

Tracy McGovern
Alicia Wilson
Frohnmayer Deatherage Jamieson Moore Armosino & McGovern
2592 East Barnett Road
Medford, OR 97504

John Barhoum
Tracy Frazier
Sarah Tuthill-Kveton
Chock Barhoum LLP
121 SW Morrison Street, Suite 415
Portland, OR 97204

Gerald Warren
Kenneth Montoya
Law Office of Gerald L. Warren and Associates
901 Capitol Street NE
Salem, OR 97301

      Attorneys for Defendants

HERNÁNDEZ, District Judge:

      Plaintiff David Brooks brings this action against Defendants City of Newberg ("the

City"), City Managers Joe Hannan and David Clyne, City Attorney Truman Stone, Citycounty

Insurance Services ("CIS"), Tamara Jones (collectively "City Defendants"), and City Director of

Human Resources Anna Lee ("Lee"), raising claims under 42 U.S.C. § 1983 for violations of his

free speech, equal protection, and due process rights guaranteed by the U.S. Constitution, as well

as state law claims alleging whistleblower retaliation, intentional infliction of emotional distress,

defamation, and negligent hiring. Currently before the Court are City Defendants and Lee's

Special Motions to Strike under Oregon's Anti-SLAPP ("Strategic Lawsuit Against Public

Participation") statute, Oregon Revised Statute §§ ("O.R.S.") 31.150 *et seq*.; Motions to Dismiss;

Motions for a More Definite Statement; and Motions to Strike. For the reasons discussed, the

Court grants in part and denies in part Defendants' Motions.

## BACKGROUND

Plaintiff has been the City's Director of Information Technology ("IT") since 2002, and a Reserve Officer for the Newberg/Dundee Police Department since 2003. First Amended Complaint ("FAC") ¶ 15, ECF 36. Defendant Lee has been the City's Director of Human Resources ("HR") since 2016. *Id.* at ¶ 17. Defendant Clyne has been the interim City Manager since July 22, 2019. *Id.* at ¶ 18. Before Clyne's tenure, Defendant Hannan served as the City Manager from June 6, 2016 to July 22, 2019. *Id.* Defendant Stone has been the City Attorney since 2013. *Id.* at ¶ 18. Defendant CIS provides legal insurance services to the City. *Id.* at ¶ 11. Defendant Jones was CIS's employee. *Id.* at ¶ 10.

Plaintiff alleges that sometime in 2015 he was asked to search for documents related to an employee's allegations of harassment that Stone said he did not have in his possession. *Id.* at ¶ 21. Plaintiff discovered that "Stone had a trove of documents which were being concealed from the City Council." *Id.* Stone was angry with Plaintiff for revealing he had been untruthful to the City Council and demanded the then-city manager investigate Plaintiff. *Id.* The city manager declined Stone's demands and later told Plaintiff that "Stone was out to get him." *Id.*

In December 2016, the City began the recruitment process to hire an assistant for the HR Department. *Id.* at ¶ 22. The City interviewed Greg Patton and Jennifer Ortiz for the position. *Id.* Patton was a college friend of City of Newberg/Dundee Chief of Police Brian Casey. *Id.* The City hired Ortiz for the position in February 2017. *Id.* at ¶ 23. The next month, Patton's attorney sent the City a public records request for documents related to the hiring of the HR assistant. *Id.* at ¶ 24. The request was forwarded to Lee for a response. *Id.* Shortly after receiving Patton's record request, Lee modified an HR assistant applicant tracking spreadsheet with Stone's knowledge and approval. *Id.* at ¶¶ 24-25.

On March 24, 2017, Chief Casey forwarded Patton an internal email that Lee sent announcing the City's hiring of Ortiz for the HR assistant position. *Id.* at ¶ 26. When asked to clarify his record request by a City employee, Patton's lawyer specified he was requesting documents related to Ortiz's hiring and attached Lee's hiring announcement email in his response. *Id.* at ¶¶ 28-29. A few days later, Lee emailed an IT employee asserting that the City had "received documents from applicants that are not posted on our job site, the only other way they could have the document was that it was sent from the HR drive by an employee." *Id.* at ¶ 30.

On April 10, 2017, Lee's user account was used to modify the applicant tracking spreadsheet a second time. *Id.* at ¶ 31. On April 26th, the City received tort claim and preservation notices from Patton alleging the City discriminated against him in the hiring process. *Id.* at ¶ 32-33. Stone tasked Plaintiff with preserving electronically stored information ("ESI") related to the claim. *Id.* at ¶ 34. That same day, Lee sent herself an email documenting her belief that Casey was helping Patton with his discrimination claim by sending him internal City documents. *Id.* at ¶ 35.

The next day, April 27th, Plaintiff discovered that Lee's user account had made two modifications to the applicant tracking spreadsheet during his search for ESI related to the Patton lawsuit. *Id.* at ¶ 36. After bringing the modifications to Stone and City Manager Hannan's attention, Plaintiff requested permission to freeze Lee's user account to ensure no other modifications could be made to the file; however, Stone and Hannan denied that request. *Id.* at ¶ 37. At first, Hannan gave Plaintiff permission to pull the back-up tapes containing the pre-modification version of the HR spreadsheet from the overwriting rotation schedule. *Id.* at ¶ 38. Stone, however, ordered Plaintiff not to view the unaltered tracking spreadsheet and not to pull

the back-up tapes from rotation. *Id.* Hannan directed Plaintiff to follow Stone's orders. *Id.* Plaintiff alleges Stone gave him the order knowing that it would result in the destruction of evidence. *Id.*

A few hours after Plaintiff informed Stone and Hannan of the file modifications, Lee's user account was used to modify the applicant spreadsheet for a third time. *Id.* at ¶ 39. Stone knowingly produced the altered version of the spreadsheet in response to Patton's records request. *Id.* Lee also sent Stone an email that day alleging Casey was behind the Patton lawsuit and was doing so to retaliate against her. *Id.* at ¶ 40.

Over the next several days, Plaintiff reminded Stone that IT needed a final decision from him on what to do with the backup tape containing the unmodified version of the file. *Id.* at ¶ 41. Stone told Plaintiff not to do anything until he consulted with Defendant CIS. *Id.*  Stone also told Plaintiff that he was "looking into" Casey even though Lee's user account was used to make the file modifications. *Id.* On May 2nd, Stone emailed Hannan, Plaintiff, and IT instructions to search for and retain documents responsive to Patton's discrimination claim. *Id.* at ¶ 42. Stone also ordered IT not to make any changes to its back up and archiving procedure. *Id.* An IT employee emailed Stone for clarification the next day, noting his order would "result in the loss of the historical backup data that is stored on those tapes." *Id.* at ¶ 43. After Stone failed to reply for several days, Plaintiff sent Stone a follow-up email asking if the IT employee's interpretation of his order was correct. *Id.* Stone affirmed that it was. *Id.* The back-up tape was overwritten sometime in May 2017. *Id.* at ¶ 48.

That same month, Plaintiff met with a city councilor to relay his frustrations with Hannan and Stone's orders causing the destruction of evidence, as well as Stone's desire to investigate Casey based solely on Lee's allegation that Casey was behind the Patton lawsuit. *Id.* at ¶ 44.

In June 2017, Lee made an official complaint to Hannan alleging workplace harassment against Casey. *Id.* at ¶ 45. On July 11th, Lee reported a broken lock on one of the HR file cabinets to the Public Works Department for repair. *Id.* at ¶ 46. Lee sent herself an email that day documenting the incident and her belief that someone tampered with the lock. *Id.* Lee told a handful of people about the broken lock, including Stone, but did not report the incident to the police. *Id.*

On October 23, 2017, during a telephone conference with Stone and outside counsel representing the City in the Patton lawsuit, Plaintiff informed outside counsel of Lee's file modifications and that the originals had been destroyed when Stone ordered Plaintiff to keep the back-up tapes in the rotation. *Id.* at ¶ 48. At the request of outside counsel, Plaintiff compared the modified spreadsheet to spreadsheets used in other recruitments and discovered the other documents had a score column for the applicants that was missing from the modified spreadsheet. *Id.*

On November 9, 2017, Plaintiff learned about the broken lock from a coworker and reported it to Casey, who assigned Detective Baltzell to investigate the incident. *Id.* at ¶¶ 51, 53. A city councilor later informed Plaintiff that Stone had told the City Council that he did not report the incident to the police because he and Lee believed Casey had broken into the filing cabinet to find evidence for Patton to use in his lawsuit. *Id.* at ¶¶ 54-55. Hannan authorized an outside investigation of the broken lock at Casey's request. *Id.* at ¶ 56. Oregon State Police ("OSP") Detective Ted Moisan conducted the investigation. *Id.* at ¶¶ 57, 59-62, 64-65.

Plaintiff reported Hannan and Stone's actions to two more city councilors during the fall of 2017. *Id.* at ¶ 49-50. On December 8th—the day after one of those meetings—Hannan admonished Plaintiff for bringing his complaints outside "the chain of command." *Id.* at ¶ 50.

In December 2017 or January 2018, Stone's legal assistant informed Lee that Plaintiff had reported the broken lock to Casey. *Id.* at ¶ 58. Plaintiff alleges this disclosure was improper and exposed him to Lee's subsequent retaliatory harassment. *Id.* On January 11, 2018, Casey sent a city councilor an email "containing allegations against Lee and Stone." *Id.* at ¶ 63. The City hired an outside investigator to investigate Casey's allegations as well as Lee's previous complaints against Casey. *Id.*

In February or March 2018, Lee informed Hannan that "she was conducting an HR investigation of Plaintiff based on problems in his department." *Id.* at ¶ 66. Hannan took over the investigation and discovered that Lee's allegations of "problems" were unfounded. *Id.* After Plaintiff complained to Hannan that Lee was harassing him, Hannan informed Plaintiff that the investigation was closed and admitted that Lee was retaliating against him. *Id.*

In March 2018, Plaintiff agreed to serve as a part-time forensic examiner for the Newberg/Dundee Police Department. *Id.* at ¶ 67. Hannan approved the position and agreed to give Plaintiff an additional compensation package. *Id.* Despite several requests to Hannan before he resigned, Plaintiff never received the agreed upon compensation. *Id.*

In April 2018, the outside investigation into Lee and Casey's complaints concluded that: Stone told a city councilor that Lee believed Casey broke into the HR file cabinet, Lee accused Casey of altering HR documents, and Plaintiff alleged Lee had altered documents relating to the Patton lawsuit. *Id.* at ¶ 69. Hannan declined to take any disciplinary action based on the investigation's findings. *Id.* at ¶ 70.

After several unsuccessful attempts to interview Lee about the broken lock in September 2018, Detective Moisan completed his investigation and forwarded it to the Yamhill County District Attorney for consideration. *Id.* at ¶¶ 71-73. Although the district attorney declined to

bring charges, he later expressed frustration to Detective Moisan that City employees were invoking "privileges" to hide wrongdoing. *Id.* at ¶¶ 73-74.

Deposition testimony in the Patton lawsuit revealed that Plaintiff had exchanged text messages with a city councilor about the modifications of the HR applicant tracking file. *Id.* at ¶ 75. In April 2019, Stone demanded Hannan suspend Plaintiff for failing to disclose the text messages pursuant to Patton's preservation and records request. *Id.* at ¶ 76. At Sone and Lee's insistence, Hannan questioned Plaintiff on three different occasions about the text messages. *Id.* Plaintiff eventually complained to Hannan that his interrogations were becoming harassing. *Id.*

Hannan initially declined to take any action against Plaintiff for not disclosing the text messages because outside counsel recommended against doing so based on the City's lack of a record retention policy for employees' personal devices and Stone's previous instructions to City employees that their personal text messages were not subject to public records requests. *Id.* at ¶ 77. Despite his previous position on City employees' personal devices, Stone insisted that Hannan discipline Plaintiff and threatened to investigate Plaintiff as "an officer of the Court" if Hannan did not do so himself. *Id.* Under pressure from Stone, Hannan began to investigate Plaintiff over the text messages and tried to pressure Plaintiff to sign a workplace conduct agreement admitting he had behavioral problems. *Id.* Plaintiff refused to sign the conduct agreement and remained under pressure to sign it until the City dropped the matter after Plaintiff served a tort claim notice on the City. *Id.*

On May 23 and 24, 2019, Lee submitted written complaints against Plaintiff to Hannan. *Id.* at ¶ 78. Lee alleged Plaintiff, Casey, and another Newberg police officer conspired to harass Lee by: "filing 'a false police report, stating the HR office . . . was broken into'; falsely accusing Lee of blaming the alleged burglary on Casey; accessing the confidential HR drive, taking

confidential documents, falsely accusing Lee of modifying the documents, and sharing the confidential documents[;] and filing public record requests designed to intimidate Lee." *Id.*

On June 5th, Plaintiff received a letter from Stone informing him that the City was investigating a complaint of harassment that listed him as a responsible party. *Id.* at ¶ 80. Plaintiff was not informed who had filed the complaint or the nature of the allegations of harassment that were made. *Id.* The letter informed Plaintiff that his refusal to comply with the investigation could subject him to disciplinary action, including termination, and that he would likely be disciplined if the allegations against him were sustained. *Id.* The letter also stated that the City had hired an outside firm to serve as "neutral fact-finders and conduct an impartial investigation." *Id.* When Plaintiff's attorney contacted the outside firm to clarify the predicate for the investigation, he was told that the firm was acting at the direction of CIS and Defendant Jones and that communications between the firm and the City were attorney-client privileged. *Id.* at ¶ 81. Jones later contacted Plaintiff's attorney to clarify that she was acting as outside counsel for the City and had been directed by Stone to oversee the investigation by the outside firm, who had also been hired to act as the City's legal counsel. *Id.* at ¶ 82. At the end of June 2019, Jones, on behalf of Stone, provided an updated letter to Plaintiff containing more details of the allegations against Plaintiff. *Id.* at ¶ 83.

In September 2019, a jury returned a verdict for Patton on his discrimination claim against the City. *Id.* at ¶ 84. Plaintiff believes Stone's order resulting in the destruction of the HR tracking file was a significant factor in the jury's decision. *Id.*

On November 4, 2019, the City Council accepted and adopted the findings and report of the outside firm's investigation of Lee's complaint. *Id.* at ¶ 85. The City Council resolved to publish the report but redacted details concerning Stone's order to destroy the HR file and his

statements about wanting to investigate Casey instead of Lee. *Id.* at ¶ 86. Plaintiff alleges the

City Council publishing the report was "retaliatory in response to Plaintiff's protected speech."

*Id.* The next day, Defendant City Manager Clyne issued a press release to accompany the release

of the investigative report. *Id.* at ¶ 168. In the press release, Clyne stated, "the findings in this

report are concerning" and "there are personnel issues that need addressing." *Id.* ¶ 169.

Three days later, Plaintiff emailed Clyne to resolve the issue of the additional

compensation for his part-time work as a forensic examiner promised to him by Hannan. *Id.* at

¶ 87. Plaintiff documented his multiple unsuccessful attempts to secure the agreed upon

compensation from Hannan prior to his resignation. *Id.* On November 18, 2019, Clyne denied

Plaintiff's request. *Id.* Plaintiff alleges Clyne's denial was in retaliation against Plaintiff's

protected speech and whistleblowing activities. *Id.*

Plaintiff also alleges that, between 2015 and 2019, he reported allegations of sexual

harassment to "others in the City including Hannan" on behalf of one of his subordinates. *Id.* at

¶ 88. Plaintiff alleges "Defendants retaliatory actions" were due in part to those reports. *Id.*

In July 2019, the employees of the City's Engineering and IT Departments began the

process of joining a union. *Id.* at ¶ 89. For several months, Lee excluded Plaintiff from

management meetings to discuss the unionizing process. *Id.* Plaintiff was the only affected

department head that was excluded from the meetings. *Id.* Plaintiff alleges Lee did so to retaliate

against him. *Id.*

In Counts One and Two of the First Claim for Relief, Plaintiff alleges Defendants

violated the First Amendment by retaliating against him for reporting: Lee's modifications to the

HR file, Stone and Hannan's orders that led to the destruction of the original file, the broken lock

on the HR filing cabinet, and allegations of sexual harassment on behalf of another City employee. FAC ¶¶ 93-107.

In Count One of his Second Claim, Plaintiff alleges all Defendants violated his Fourteenth Amendment right to Due Process by invoking attorney-client privilege and conducting a "fundamentally unfair" investigation. *Id.* at ¶¶ 108-16. In Count Two of the Second Claim, Plaintiff alleges all Defendants violated his Fourteenth Amendment right to Equal Protection by failing to investigate his reports of harassment by Lee and Stone. *Id.* at ¶¶ 117-25.

In the Third, Fourth, and Fifth Claims for Relief, Plaintiff alleges all Defendants violated Oregon's whistleblower protections, O.R.S. 659A.199, 659A.203(1)(a), and 659A.203(1)(b)(A), by threatening him with discipline in retaliation for his disclosures of Lee, Stone, and Hannan's alleged misconduct. *Id.* at ¶¶ 126-44. Plaintiff's Sixth Claim alleges Stone violated O.R.S. 659A.218 by informing Lee that it was Plaintiff who reported her unreported burglary and alleged modification of the HR files to law enforcement. *Id.* at ¶¶ 145-50. The Seventh Claim alleges all Defendants violated O.R.S. 659A.230 by discriminating and retaliating against Plaintiff based on his reporting of potential criminal conduct and cooperation with law enforcement. *Id.* at ¶¶ 151-55.

In the Eighth Claim, Plaintiff alleges all Defendants committed the tort of Intentional Infliction of Emotional Distress by ordering Plaintiff to allow evidence to be destroyed, falsely accusing him of disclosing confidential information, repeatedly threatening him with termination, subjecting him to a baseless investigation, falsely asserting attorney-client privilege, and publicly releasing a report containing false and defamatory information. *Id.* at ¶¶ 156-60.

Count One of the Ninth Claim for Relief alleges Lee defamed Plaintiff by making false allegations against him in the complaint she submitted to Hannan. *Id.* at ¶¶ 161-66. Count Two

of the Ninth Claim alleges Clyne defamed Plaintiff through statements he made in the press release accompanying the publication of the investigative report. *Id.* at ¶¶ 167-172.

Plaintiff's Tenth Claim alleges the City was negligent in hiring Lee because it failed to conduct a reasonable background investigation of Lee or ignored the findings of an investigation. *Id.* at ¶¶ 173-79.

City Defendants and Lee move to strike Plaintiff's defamation claims under Oregon's anti-SLAPP statute. Defendants also move, under Federal Rules of Civil Procedure ("Rules") 12(b)(6), 12(e), and 12(f), for an order either dismissing Plaintiff's claims, making the claims more definite and certain, or striking part of Plaintiff's claims.

## DISCUSSION

### I.    Anti-SLAPP

Defendants Clyne and Lee move to strike Plaintiff's defamation claims pursuant to Oregon's anti-SLAPP statute.

#### A.    Legal Standard

"A SLAPP suit is one in which the plaintiff's alleged injury results from petitioning or free speech activities by a defendant that are protected by the federal or state constitutions." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir. 2003). In response to a SLAPP suit, a defendant in federal court may file a motion to strike under an applicable anti-SLAPP statute. *Vineyard v. Soto*, No. 10-CV-1481-SI, 2011 WL 5358659, at *2 (D. Or. Nov. 7, 2011); *see also Thomas v. Fry's Elecs., Inc.*, 400 F.3d 1206, 1206 (9th Cir. 2005). The purpose of Oregon's anti-SLAPP statute is to "provide an inexpensive and quick process by which claims that might infringe on the right to petition and free speech on public issues could be evaluated to determine if they [are] frivolous." *Page v. Parsons*, 249 Or. App. 445, 461 (2012).

Oregon's anti-SLAPP provisions "permit a defendant who is sued over certain actions taken in the public arena to have a questionable case dismissed at an early stage." *Staten v. Steel*, 222 Or. App. 17, 27 (2008). A special motion to strike is treated "as a motion to dismiss under Or. R. Civ. P. 21A and requires the court to enter a 'judgment of dismissal without prejudice' if the motion is granted." *Gardner v. Martino*, 563 F.3d 981, 986 (9th Cir. 2009) (applying Oregon law). If the Court denies the motion, the Court must enter a limited judgment denying the motion. O.R.S. 31.150(1); *Schwern v. Plunkett*, 845 F.3d 1241, 1244-45 (9th Cir. 2017).

Analysis of a special motion to strike is a two-step process. "First, the defendant has the initial burden to show that the challenged statement is within one of the categories of civil actions described in [O.R.S.] 31.150(2)." *Id.*; *see also* O.R.S. 31.150(3). To fall within one of those categories, "the act underlying the claim itself must have been an act in furtherance of the right to petition and not just associated with it." *Deep Photonics Corp. v. LaChappelle*, 282 Or. App. 533, 546 (2016) (citation omitted). In deciding the motion, the Court will consider the pleadings and supporting and opposing affidavits, but the required showing can be made on the pleadings alone. *Vineyard*, 2011 WL 5358659, at *2 (citing *Staten*, 222 Or. App. at 29, 31).

"If the defendant meets the initial burden, the burden shifts to the plaintiff to establish that there is a probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a prima facie case." *Gardner*, 563 F.3d at 986 (quoting O.R.S. 31.150(3)). To determine whether the plaintiff has met that burden, the Court must take the facts from the pleadings and from the supporting and opposing affidavits, O.R.S. 31.150(4), and state them "in the light most favorable to plaintiffs." *Mullen v. Meredith Corp.*, 271 Or. App. 698, 702 (2015) (quotation omitted). The court must deny the motion "[i]f the plaintiff meets this burden." O.R.S. 31.150(3).

**B.     Analysis**

To begin, Plaintiff filed no substantive response to Clyne's anti-SLAPP motion. Instead, Plaintiff represents that he intends to withdraw the defamation claim against Clyne in an amended complaint, which the Court construes as a motion to voluntarily dismiss the claim under Rule 41(a)(2). Given that Plaintiff did not withdraw the claim until after Clyne had to resort to motions practice, the Court dismisses the defamation claim against Clyne with prejudice. *See* Fed. R. Civ. P. 41(a)(2) (noting the court has discretion to grant the dismissal "on terms that the court considers proper").

As to Lee's anti-SLAPP motion, Plaintiff alleges Lee made seven false and defamatory statements in her complaint to Hannan by accusing Plaintiff of: (1) filing a false police report that the HR office was broken into; (2) sharing the false police report with Patton; (3) improperly accessing the HR hard drive to remove confidential files; (4) falsely accusing Lee of altering the HR documents; (5) giving the confidential files to Patton; (6) making a targeted attempt to question Lee's character; and (7) failing to go through the City Manager or proper process in doing so. FAC ¶ 162.

Lee first argues her statements were on an issue of public interest protected under O.R.S. 31.150(2)(d) because "the public who is funding the salary of city employees would be interested to know whether one of its city employees was engaging in alleged criminal and/or insubordinate conduct[.]" Def. Lee's Mot. 10, ECF 45. O.R.S. 31.150(2)(d) applies if the alleged defamatory statement: "(1) was 'in furtherance of the constitutional right of free speech,' and, if so, (2) 'in connection with a public issue or an issue of public interest.'" *Neumann v. Liles* ("*Neumann III*"), 295 Or. App. 340, 344 (2018), *review denied*, 365 Or. 195 (2019). Where, as here, "a statement addresses a matter of public concern, the 'dispositive question is whether a reasonable

factfinder could conclude that the statement implies an assertion of objective fact.'" *Campos v. Jensen*, 296 Or. App. 402, 406 (2019) (quoting *Neumann v. Liles* ("*Neumann II*"), 358 Or. 706, 718-19 (2016)). Statements of opinion or speculation are protected speech whereas false assertions of fact are not. *Neumann II*, 358 Or. at 719, 722.

To make this determination, the Court analyzes the statements at issue under a three-part test:

> (1) [W]hether the general tenor of the entire publication negates the impression that the defendant was asserting an objective fact; (2) whether the defendant used figurative or hyperbolic language that negates that impression; and (3) whether the statement in question is susceptible of being proved true or false.

*Id.* at 719. The defendant's statements are not to be viewed in isolation but must be analyzed as a whole and in the specific context they were made. *Id.*

Here, Lee's statements against Plaintiff were made in the context of a complaint submitted by Lee to the City Manager and Plaintiff's superior at the time. In her complaint to Hannan, Lee accused Plaintiff of filing a false police report, tampering with confidential files, sharing confidential information with an individual who was suing the City for employment discrimination, falsely accusing Lee of altering documents, and making a targeted attempt to sully Lee's character. Lee therefore alleged that Plaintiff committed serious, and potentially criminal, acts of misconduct. The general tenor of the complaint is that of serious, factual allegations, which does not negate the impression that Lee was asserting objective facts. Nor did Lee use any figurative or hyperbolic language that would suggest she was expressing an opinion. Rather, she stated her allegations in no uncertain terms. Finally, Lee's statements can be proved true or false. Indeed, the investigation sparked by Lee's complaint concluded that her allegations against Plaintiff were unfounded. Pl.'s Resp. 11, ECF 53. Accordingly, Lee's alleged statements

imply an assertion of objective fact under *Neumann*'s three-part test and are therefore not protected by O.R.S. 31.150(2)(d).

Lee next contends that some of her allegations are protected under O.R.S. 31.150(2)(b) because they were written statements in connection with a judicial proceeding. Specifically, Lee argues that her reference to the confidential documents involved in the Patton litigation brings her statements within the ambit of (2)(b), which protects "[a]ny oral statement made, or written statement or other document submitted, in connection with an issue under consideration or review by a . . . judicial body[.]" O.R.S. 31.150(2)(b). Lee's mere reference in her complaint to documents involved in the Patton litigation does not establish that she made the statements "in connection" with the lawsuit. *See Deep Photonics Corp.*, 282 Or. App. at 543-44 (2016) (noting O.R.S. 31.150(2)(b) "plainly covers statements made or documents submitted in connection with a case after it comes 'under consideration' by a court, such as, for example, pleadings filed with a court or statements made by an attorney or a witness at a hearing). As alleged, Lee's statements were to retaliate against Plaintiff, not to advance any of the issues in the Patton litigation. That Lee's allegations indirectly touched on documents involved in the lawsuit does not indicate that the statements were made in connection with the issues being considered by the trial court. Accordingly, the Court denies Lee's anti-SLAPP motion.[1]

## II.    Motions to Dismiss – Rule 12(b)(6)

City Defendants and Lee move to dismiss several of Plaintiff's claims for failing to state a claim upon which relief can be granted.

---

[1] The parties have requested attorneys' fees and costs under O.R.S. 31.150. The Court, however, declines to reach those requests at this time because the requests are cursory and not well developed. Instead, the Court will take up the parties' fee and cost petitions, if any, at the end of this litigation.

### A.    Legal Standard

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* (citations and footnote omitted).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In other words, a complaint must state a plausible claim for relief and contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct[.]" *Id*. at 679.

### B.    First Amendment Retaliation

City Defendants argue Plaintiff's First Amendment retaliation claim fails to state a claim for relief against CIS and Jones because there are no allegations in the FAC that they retaliated against Plaintiff. In response, Plaintiff argues that his allegation that "CIS, through Jones and others, conspired with Lee, Stone, and the City of Newberg to cause[] . . . [Plaintiff] to be

terminated" is enough to state a First Amendment retaliation claim. FAC ¶ 91. Vague and conclusory allegations of a conspiracy, however, do not support a claim under § 1983. *Woodrum v. Woodward Cty., Okl.*, 866 F.2d 1121, 1126 (9th Cir. 1989). Accordingly, the Court grants City Defendants' motion to dismiss CIS and Jones from the First Amendment Retaliation claim because the allegations do not state a plausible claim for relief.

City Defendants also contend that the FAC fails to state a cognizable *Monell* claim against the City. Municipalities cannot be liable under § 1983 for the unconstitutional acts of their employees based on a theory of respondeat superior. *Hunter v. Cty. of Sacramento*, 652 F.3d 1225, 1232 (9th Cir. 2011). Instead, municipal liability for an alleged constitutional violation by an employee is allowed only "when an employee is acting pursuant to an expressly adopted official policy, longstanding practice or custom, or as a final policymaker." *Thomas v. Cty. of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978)), *amended*, 776 F.3d 1020 (9th Cir. 2015). If relying on the "final policymaker" prong of liability, the final policymaker must have personally committed the alleged constitutional violation, or delegated that final policymaking authority to, or ratified the decision of, a subordinate. *Ulrich v. City & Cnty of San Francisco*, 308 F.3d 968, 985 (9th Cir. 2002); *Gregory v. City of Newberg*, No. 3:15-cv-00473-BR, 2016 WL 1069053, at *3 (D. Or. Mar. 17, 2016).

Plaintiff clarifies that the only *Monell* claim he intends to bring against the City is for First Amendment retaliation. Plaintiff argues the claim should not be dismissed as to Hannan and Clyne because, as City managers, they were final policymakers whose constitutional violations are attributable to the City. City Defendants do not dispute the Hannan and Clyne were final

policymakers. The Court therefore denies City Defendants' motion to dismiss the *Monell* claim to the extent that it is based on Hannan and Clyne's alleged retaliatory conduct.

Plaintiff also asserts that Lee, Stone, Jones, and CIS's conduct could support a *Monell* claim to the extent that Hannan, Clyne, or the City Council ratified their behavior. The FAC, however, does not allege that Hannan or Clyne ratified the other Defendants' behavior. Moreover, a municipality is liable "on the basis of ratification when the officials involved adopted *and expressly approved* of the acts of others who caused the constitutional violation." *Trevino v. Gates*, 99 F.3d 911, 920 (9th Cir. 1996), *holding modified by Navarro*, 250 F.3d 729 (emphasis added). The City Council's mere acceptance and publication of the investigative report—which found Lee's allegations against Plaintiff were entirely unfounded—is not an approval of those allegations, much less "all of the [unspecified] conduct of the various Defendants." Pl.'s Resp. 26. Accordingly, the Court grants City Defendants' motion to dismiss the *Monell* claim to the extent that it is based on conduct of Lee, Stone, Jones, and CIS.

### C.      Due Process

City Defendants move to dismiss Plaintiff's Due Process claim because he has not alleged what right Defendants deprived him of without due process of law. City Defendants also argue Plaintiff's allegation that CIS and Jones refused to furnish documents to him under the guise of attorney-client privilege also fails to state a cognizable Due Process violation. In response, Plaintiff clarifies that the right he is claiming is a liberty interest in his good name, reputation, and character. Plaintiff avers that Defendants injured this liberty interest without due process by subjecting him to a fundamentally unfair investigation with a preconceived outcome in mind.

Plaintiff provides no authority for the proposition that CIS and Jones' assertion of attorney-client privilege to deny him certain documents he requested states a cognizable Due

Process violation. More importantly, even assuming the FAC specified that Plaintiff was alleging an interest in his good name and reputation, that "constitutionally protected liberty interest is implicated only if an employee is discharged in a manner that creates a false and defamatory impression about him and thus stigmatizes him and forecloses him from other employment opportunities." *White v. Thomas*, 660 F.2d 680, 684 (5th Cir. 1981) (citing *Codd v. Velger*, 429 U.S. 624, 628 (1977); *Paul v. Davis*, 424 U.S. 693, 706 (1976)); *see also Mustafa v. Clark Cnty Sch. Dist.*, 157 F.3d 1169, 1179 (9th Cir. 1998) (noting a public employee "must show that (1) the accuracy of the charge is contested; (2) there is some public disclosure of the charge; and (3) the charge is made in connection with termination of employment") (citation and internal quotation marks omitted). Plaintiff, however, concedes he "was not terminated by the City." Pl.'s Resp. 18. Indeed, the purportedly tainted investigation concluded that Lee's allegations against Plaintiff were unsubstantiated. *Id.* at 11; Brooks Decl., Ex. 12 at 31, 36, 39-40, ECF 55-12.

Additionally, Plaintiff's allegation that Hannan deprived him of his property interest in a forensic examiner position does not state a Due Process violation. As the Ninth Circuit has noted, "[a]s long as employment options within the profession remain, no due process interests have been implicated. Unsurprisingly, every circuit that has addressed the issue has rejected the claim that the denial of a promotion constitutes a deprivation of liberty." *Nunez v. City of Los Angeles*, 147 F.3d 867, 873 (9th Cir. 1998) (citation omitted). Accordingly, the Court dismisses Plaintiff's Due Process claim.

### D.    Proper Defendants to the State Law Claims

Defendants move to dismiss the individually named Defendants from the state law claims and substitute the City in their place because the City is the only proper defendant to those claims under the Oregon Tort Claims Act ("OTCA"). The Court notes preliminarily that, in

addition to Plaintiff's common law tort claims, Plaintiff's state law whistleblower claims "are [also] torts subject to the OTCA[.]" *Rabkin v. Oregon Health Scis. Univ.*, 350 F.3d 967, 976-77 (9th Cir. 2003); *see also* O.R.S. 30.260(8) (defining a "tort" as "the breach of a legal duty that is imposed by law, other than a duty arising from contract or quasi-contract, the breach of which results in injury to a specific person or persons for which the law provides a civil right of action for damages or for a protective remedy"). The OTCA provides that "the sole cause of action for a tort committed by officers, employees or agents of a public body acting within the scope of their employment or duties . . . is an action against the public body." O.R.S. 30.265.

Plaintiff does not seriously oppose City Defendants' argument that the individually named Defendants are not proper defendants to the state law claims under the OTCA. Pl.'s Resp. 13-14; *see also* FAC ¶ 9 (alleging the City is vicariously liable for its employees' tortious acts committed in the scope of their employment). Instead, Plaintiff requests leave to amend the complaint, discussed *infra* Section V, to replead the state law claims only against the City and/or CIS. Pl.'s Resp. 13-14; Lenon Decl., Ex. 1 ("Proposed SAC") at ¶ 9, ECF 54-1. Accordingly, Clyne, Stone, Hannan, Jones, and Lee are dismissed from the state law claims.[2]

Plaintiff, however, argues that CIS is a proper party to the state law claims because "CIS is not an insurance company," as alleged in the FAC, "it is a member owned, managed risk pool. The members/owners are various cities and counties in Oregon, including the City of Newberg. That is to say, the City is a part owner of CIS and as such CIS is a quasi-public entity amenable to suit like other quasi-public entities." Pl.'s Resp. 14; *see also* Proposed SAC ¶ 11. City

---

[2] Plaintiff, however, does not concede that the City should be substituted for Lee as to the defamation claim. *See* discussion *infra* Section II.F. The Court need not reach Lee's alternative arguments for dismissing the state law claims against her because the City is the only proper Defendant to those claims.

Defendants argue that Plaintiff's "new allegation is a bald legal conclusion and the Amended Complaint (and the [Proposed] Second Amended Complaint) fails to allege facts sufficient to support such a legal conclusion." City Defs.' Reply 6, ECF 59. City Defendants ask this Court to take judicial notice of CIS's Trust Agreement and Bylaws, which the City argues establish that it is not an owner of CIS.

Whether the City owns CIS is irrelevant. Rather, the question of whether CIS is suable under the OTCA turns on whether CIS is a "public body." O.R.S. 30.265(2). According to its Trust Agreement,[3] CIS is an "intergovernmental entity," organized pursuant to O.R.S. 190.010(5). CIS Declaration and Agreement of Trust, Art. 2.1, https://www.cisoregon.org/About /TrustDocs (last visited Jan. 14, 2021). CIS is therefore "a 'public body' as that term is defined in ORS 30.260(4)(b)." *Id.*; *see also* O.R.S. 30.260(4)(b) (defining a "public body" as "[a]ny nonprofit corporation that is organized and existing under ORS chapter 65 and that has only political subdivisions or municipal, quasi-municipal or public corporations in this state as members"). Thus, CIS is a proper defendant to the state law claims because it is a "public body" under the OTCA.

Nevertheless, CIS must be dismissed from Plaintiff's whistleblower claims for a separate reason: Those claims are only actionable against an employer, and CIS is not Plaintiff's employer. Under Oregon law, an "'Employer' means any person who[,] directly or through an agent, engages or uses the personal service of one or more employees, reserving the right to control the means by which such service is or will be performed." O.R.S. 659A.001(4)(a).

---

[3] As requested by City Defendants, the Court takes judicial notice of the Trust Agreement because it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201(b), and is appropriately considered on a motion to dismiss. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 989 (9th Cir. 2009).

Plaintiff alleges CIS was acting as the City's agent. FAC ¶ 11. City Defendants argue that "[b]ecause an employer 'may control its employees through an agent,' an agent is not an 'employer' who may be held liable under Chapter 659A." City Defs.' Mot. 12 (quoting *Ballinger v. Klamath Pac. Corp.*, 135 Or. App. 438, 452 (1995)). *Ballinger*, however, is not as broad as City Defendants assert. That case "stands for the uncontroversial point that[] entities can act through agents, and when they do, the agents are merely exercising the power the[] entity holds and are not acting on their own, independent, reservation of the right to control." *McClusky v. City of N. Bend*, 308 Or. App. 138, 144 (2020) (citing *Ballinger*, 135 Or. App. at 451-52). Contrary to City Defendants' assertion that an employer's agent cannot be also be an employer, O.R.S. 659A.001(4)(a) "specifies that it is the one who reserves the right to control[,] who is the employer, and not the agent acting on behalf of the person or entity who reserves the right to control." *Id.* Therefore, the fact that CIS was acting as the City's agent does not, in and of itself, establish that CIS was not Plaintiff's employer.

Plaintiff, however, fails to expressly allege that CIS had a right to control him. Nor does he allege CIS had the authority to demote or terminate him, sign or withhold paychecks, determine his work schedule, or any other indicia of control. *See*, *e.g.*, *Rubalcaba v. Nagaki Farms, Inc.*, 333 Or. 614, 618 n.1 (2002) ("Factors relevant to the right to control test [include] whether the employer retains the right to control the details of the method of performance, the extent of the employer's control over work schedules, whether the employer has power to discharge the person without liability for breach of contract, and payment of wages."); *Ballinger*, 135 Or. App. at 452 (applying same factors and finding foremen with "limited supervisory [and scheduling] authority" did not meet the definition of an "employer"). As such, Plaintiff has not

alleged facts establishing CIS was his employer. The Court therefore dismisses the whistleblower claims against CIS.

### E.  Intentional Infliction of Emotional Distress

City Defendants move to dismiss Plaintiff's claim for intentional infliction of emotional distress ("IIED") against CIS and Jones because the allegations do not state a claim for relief. To prevail on an IIED claim, Plaintiff must show that (1) Defendants intended to inflict severe emotional distress, (2) Defendants' acts were the cause of his severe emotional distress, and (3) Defendants' acts constituted an extraordinary transgression of the bounds of socially tolerable conduct. *McGanty v. Staudenraus*, 321 Or. 532, 543 (1995). "It [i]s for the trial court to determine, in the first instance, whether the defendants' conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Pakos v. Clark*, 253 Or. 113, 132 (1969)

Plaintiff argues CIS and Jones intentionally caused him emotional distress by overseeing an investigation they should have known was based on false allegations and by participating in the City's threats to terminate him. These allegations, however, do not rise to the level an extraordinary transgression of what is socially tolerable. *Watte v. Maeyens*, 112 Or. App. 234, 237 (1992) (no claim where employer threw a tantrum, screamed and yelled at his employees, accused them of being liars and saboteurs, then fired them all); *Madani v. Kendall Ford, Inc.*, 312 Or. 198, 205-06 (1991) (no claim where employee terminated for refusing to pull down pants); *Snyder v. Sunshine Dairy*, 87 Or. App. 215, 218 (1987) (noting "excessive supervision and unjustified reprimands, even if proved, cannot amount to an extraordinary transgression of the bounds of socially tolerable conduct.") (citations omitted). Accordingly, the Court grants City Defendants' motion to dismiss the IIED claim as to CIS and Jones.

///

### F.      Defamation Per Se

Lee argues the Court must dismiss the defamation claim against her because, under the OTCA, the City is the only proper Defendant to that claim.[4] As discussed, the OTCA provides that "the sole cause of action for a tort committed by officers, employees or agents . . . acting within the scope of their employment or duties . . . is an action against the public body." O.R.S. 30.265. "As a general rule, whether a particular act is within the scope of employment is to be decided by the trier of fact." *Dryden v. State Acc. Ins. Fund Corp.*, 103 Or. App. 76, 81 (1990).

Plaintiff argues O.R.S. 30.265 does not apply because it was not within the scope of Lee's employment to make knowingly false accusations against Plaintiff. While Lee acting outside the scope of her employment could permit the defamation claim to proceed against her individually, the FAC does not contain such an allegation. *See* FAC ¶¶ 6, 9. Accordingly, the Court grants Lee's motion to dismiss under Rule 12(b)(6) because, as alleged, the FAC fails to state a claim for relief.

### G.      Negligent Hiring

The City moves to dismiss Plaintiff's negligent hiring claim. An employer can be liable for "negligently placing an employee with known dangerous propensities, or dangerous propensities which could have been discovered by a reasonable investigation, in a position where it is foreseeable that he could injure the plaintiff in the course of the work." *Chesterman v. Barmon*, 82 Or. App. 1, 4 (1986), *aff'd and remanded*, 305 Or. 439 (1988). The City argues Plaintiff failed to allege what Lee's dangerous propensity was and whether the City knew of that propensity or would have discovered it through reasonable investigation. The City further argues

---

[4] Lee's contention that the defamation claim fails because her statements are constitutionally protected is unavailing. As the Court found in its analysis of her anti-SLAPP motion, Lee's allegedly false complaints against Plaintiff are not constitutionally protected speech.

that Plaintiff fails to allege facts showing it was reasonably foreseeable that Lee would harm

him. The Court disagrees.

Plaintiff claims the City owed him a duty to not hire an employee that would expose him

to a risk of foreseeable harm. FAC ¶ 174. He alleges Lee made similarly unfounded allegations

of harassment when she was previously employed by another municipality. *Id.* at ¶ 176. Plaintiff

contends the City would have discovered Lee's history of false allegations if they had conducted

a reasonable background investigation of her during the hiring process. *Id.* at ¶ 178. Plaintiff

alleges the City either failed to conduct a reasonable investigation or ignored the findings of an

investigation before hiring Lee, and in doing so caused a foreseeable risk that Lee would make

false and damaging allegations against Plaintiff. *Id.* at ¶¶ 178-79. Because the allegations state a

claim for relief, the Court denies City Defendants' motion to dismiss.

The City next argues that Plaintiff's claim for noneconomic damages stemming from the

City's negligent hiring of Lee must be dismissed because damages for emotional distress are not

recoverable in a negligence action absent physical injury. The Court agrees with City

Defendants' on this point. Under Oregon law, noneconomic damages caused by ordinary

negligence are not recoverable except in limited circumstances not present here. *Hammond v.

Cent. Lane Commc'ns Ctr.*, 312 Or. 17, 22-23 (1991); *Lowe v. Philip Morris USA, Inc.*, 207 Or.

App. 532, 551, *aff'd*, 344 Or. 403 (2008). Therefore, Plaintiff's claim for negligent hiring is

dismissed to the extent that it alleges the City is liable for Plaintiff's noneconomic damages.

### H.    Punitive Damages

The City moves to strike or dismiss Plaintiff's claim for punitive damages because

punitive damages are not recoverable against a municipality in a § 1983 action. *City of Newport

v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). The Court denies City Defendants' motion to

strike because "Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974–75 (9th Cir. 2010). Nonetheless, Plaintiff rightly concedes that punitive damages are not recoverable against the City and represents that he will specify in an amended pleading that he only seeks punitive damages against the individual Defendants in their personal capacities. Pl.'s Resp. 23-24. The Court therefore dismisses Plaintiff's claim for punitive damages against the City under Rule 12(b)(6).

### III.    Motions to Strike – Rule 12(f)

The court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter. Fed. R. Civ. P. 12(f). Granting a motion to strike is within the discretion of the district court. *See Whittlestone, Inc.*, 618 F.3d at 975 (motion to strike under Rule 12(f) reviewed for abuse of discretion). Rule 12(f) motions to strike are viewed with disfavor and are infrequently granted. *Legal Aid Servs. of Or. v. Legal Servs. Corp.*, 561 F. Supp. 2d 1187, 1189 (D. Or. 2008), *aff'd*, 608 F.3d 1084 (9th Cir. 2010); *see also Capella Photonics, Inc. v. Cisco Sys., Inc.*, 77 F. Supp. 3d 850, 858 (N.D. Cal. 2014) ("Motions to strike are regarded with disfavor because of the limited importance of pleadings in federal practice and because they are often used solely to delay proceedings.") (quotation marks and alterations omitted).

City Defendants move to strike various "statements and allegations by third parties found in paragraphs 60, 62-65, 68-72, 74, 84, and 91" of the FAC. City Defs.' Mot. 16-17, ECF 34. Lee joins in City Defendants' motion and additionally moves to strike certain statements and allegations in paragraphs 53 and 73-74 of the FAC. The Court, however, finds unpersuasive

Defendants' unadorned assertions that these statements and allegations are scandalous, immaterial, or impertinent. Defendants' motions to strike are denied.

## IV.    Motions for a More Definite Statement – Rule 12(e)

"A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12 (e). A motion for a more definite statement is generally left to the district court's discretion. *Sheffield v. Orius Corp.*, 211 F.R.D. 411, 414 (D. Or. 2002). "A Rule 12(e) motion for more definite statement is disfavored and is proper only if the complaint is so indefinite that the defendant cannot ascertain the nature of the claim being asserted, meaning the complaint is so vague that the defendant cannot begin to frame a response." *Adobe Sys. Inc. v. Software Speedy*, No. C–14–2152 EMC, 2014 WL 7186682, at *5 (N.D. Cal. Dec. 16, 2014) (citation omitted).

Rule 12(e) is designed to strike at unintelligibility rather than want of detail. *Maixner v. Bank of Am. Home Loans*, No. CV–10–3037–CL, 2010 WL 5918860, at *3 (D. Or. Nov. 18, 2010), *report and recommendation adopted*, No. CIV. 10-3037-CL, 2011 WL 825201 (D. Or. Mar. 3, 2011) (citing *Bautista v. L.A. Cnty.*, 216 F.3d 837, 843 n.1 (9th Cir. 2000)). "Rule 12(e) motions attack the intelligibility of the complaint, not the lack of detail, and are properly denied where the complaint notifies the defendant of the substance of the claims asserted." *Holdner v. Coba*, No. CV–09–979–AC, 2010 WL 678112, at *1 (D. Or. Feb. 25, 2010) (internal quotation marks omitted). Where the detail sought is available through discovery, the motion should be denied. *Feldman v. C.I.A.*, 797 F. Supp. 2d 29, 42 (D.D.C. 2011) ("Courts are reluctant to compel a more definite statement pursuant to Rule 12(e), and to prevent Rule 12(e) from becoming a substitute for discovery, courts will generally deny a motion for a more definite

statement where the information sought may be obtained in discovery.") (internal quotation marks, brackets, and ellipsis omitted).

Here, Defendants argue certain claims and factual allegations need to be made more definite and certain. Defendants also move the Court for an order directing Plaintiff to identify the unnamed employee who Plaintiff alleges Lee questioned repeatedly about potential "issues" in Plaintiff's department, as well as the employee who brought complaints of sexual harassment to Plaintiff, which he relayed to the City and Hannan. *See* FAC ¶¶ 66, 88, 94. Defendants further argue Plaintiff should make more definite the nature of those sexual harassment complaints, who the complaints were made to, and the retaliatory actions that were taken due to Plaintiff's reporting.

The Court finds, however, that Plaintiff's claims are not so indefinite that Defendants cannot ascertain the nature of the claims being asserted. And the details sought by Defendants are likely available through discovery. Accordingly, Defendants' motions to make Plaintiff's claims more definite and certain are denied.

## V.    Motion for Leave to Amend

Lastly, Plaintiff requests leave to file a second amended complaint in his response to Defendants' motions. The Court, however, finds such an attempt improper. Although "[t]he court should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), Plaintiff's request for leave to file a second amended complaint is not in compliance with the Court's Local Rules. Under Local Rule 7-1(b), "[m]otions may not be combined with any response, reply, or other pleading." Plaintiff's motion for leave to amend his complaint is therefore denied.

///

///

**CONCLUSION**

The Court GRANTS in part and DENIES in part Defendants' Motions [34][45]. Specifically, City Defendants' Anti-SLAPP Motion is DENIED as moot because Plaintiff has voluntarily dismissed his defamation claim (Ninth Claim, Count Two) against Defendant Clyne. Defendant Lee's Anti-SLAPP motion is DENIED.

Defendants' Rule 12(b)(6) Motions are GRANTED as follows: (1) the First Amendment Retaliation claim (First Claim, Count One) is dismissed as to Defendants CIS and Jones; (2) the First Amendment *Monell* claim (First Claim, Count Two) is dismissed to the extent that it is based on the alleged conduct of Defendants Lee, Stone, Jones, and CIS; (3) the Due Process claim (Second Claim, Count One) is dismissed as to all Defendants; (4) the state law whistleblower retaliation claims (Third, Fourth, Fifth, Sixth, Seventh, and Eighth Claims) are dismissed as to all Defendants except the City; (5) the IIED claim (Eighth Claim) is dismissed to the extent that it is based on the alleged conduct of Defendants CIS and Jones; (6) the defamation claim against Defendant Lee (Ninth Claim, Count One) is dismissed; (7) the negligent hiring claim (Tenth Claim) is dismissed to the extent that it seeks recovery of noneconomic damages from the City; and (8) the request for punitive damages (Second Claim, Counts One and Two) is dismissed. Defendants' Rule 12(b)(6) Motions are DENIED in all other respects.

///

///

///

///

///

Defendants' Rule 12(f) Motions to Strike and Rule 12(e) Motions for a More Definite Statement are DENIED. Plaintiff's request for leave to file a second amended complaint is improper and therefore DENIED, and he is ordered to seek leave by formal motion within 14 days of this Opinion & Order if he desires to amend his complaint.

IT IS SO ORDERED.

DATED:   January 31, 2021   .


MARCO A. HERNÁNDEZ
United States District Judge