IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAVID BROOKS,                                    No. 3:19-cv-02085-HZ

               Plaintiff,                    OPINION & ORDER

     v.

DAVID CLYNE, in his individual and
official capacity; ANNA LEE, in her
individual and official capacity;
TRUMAN STONE, in his individual and
Official capacity; JOE HANNAN, in his
individual and official capacity; CITY OF
NEWBERG, a municipal corporation,

           Defendants.

Daniel E. Thenell
Emerson L. Lenon
Thenell Law Group, P.C.
12909 SW 68th Parkway, Suite 290
Portland, OR 97223

     Attorneys for Plaintiff

Tracy M. McGovern
Travis A. Merritt
Frohnmayer Deatherage Jamieson Moore
Armosino & McGovern
2592 East Barnett Road
Medford, OR 97504

       Attorneys for Defendants Clyne,
       Hannan, and City of Newberg

Ashleigh E. Edwards
John R. Barhoum
Sarah E. Tuthill-Kveton
Chock Barhoum LLP
121 SW Morrison Street, Suite 500
Portland, OR 97204

       Attorneys for Defendant Lee

Kenneth S. Montoya
Rebecca A. Plaza
Law Offices of Montoya, Hisel and
Associates
901 Capitol Street NE
Salem, OR 97301

       Attorneys for Defendant Stone

HERNÁNDEZ, District Judge:

       Plaintiff David Brooks brings this action against the City of Newberg ("City"), City

Managers Joe Hanan and David Clyne, City Human Resources Director Anna Lee, and City

Attorney Truman Stone. Defendants previously filed Motions to Dismiss under 12(b)(6) and

Oregon's anti-SLAPP statute, which the Court granted in part and denied in part. Upon leave of

the Court, Plaintiff filed a Second Amended Complaint ("SAC") bringing claims under 42

U.S.C. § 1983 for retaliation against free speech in violation of the First Amendment and

violation of Fourteenth Amendment Equal Protection Clause against all Defendants. Plaintiff

also brings state statutory claims against the City for retaliation against a whistleblower, claims

against the City for intentional infliction of emotional distress and negligent hiring, and a defamation claim against Defendant Lee. Plaintiff has since withdrawn his defamation claim against Defendant Lee and his equal protection claim against Defendants Lee and Stone. Defendants move for summary judgment on all remaining claims.[1] The Court grants Defendants' motions.

## BACKGROUND

Plaintiff filed this action on December 23, 2019. Plaintiff was hired as the City's Director of Information Technology ("IT") in 2002 and remained in this role until the IT Department was restructured in 2020. Second Am. Compl. ("SAC") ¶ 13, ECF 66. Plaintiff has also served as a reserve officer for the Newberg/Dundee Police Department since 2003. SAC ¶ 13. In his role as IT director, Plaintiff reported directly to the City Manager. Defendant Hanan was City Manager from June 2016 to July 2019, and Defendant Clyne was interim City Manager from July 2019 to February 2020. Defendant Lee was hired as the City's Director of Human Resources ("HR") in 2016, and Defendant Stone was the City Attorney from September 2013 to December 2020. Neither the City Attorney nor the HR Director have direct supervisory authority over the IT Director. Stone Decl. ¶ 4.

Animosity between Plaintiff and Defendants began in 2015. When the City Manager at that time raised allegations against Newberg Police Chief Brian Casey, Plaintiff was asked to search for documents related to the investigation. SAC ¶ 19. Plaintiff alleges that Defendant Stone became angry with him when Plaintiff revealed to the City Council that Stone was

---

[1] Defendants Lee and Stone each bring individual motions for summary judgment separate from the motion filed by the City, Defendant Hanan, and Defendant Clyne.

concealing a "trove of documents." SAC ¶ 19. Plaintiff claims that the City Manager told him that "he should watch his back and that Defendant Stone was out to get him." SAC ¶ 19.

In June 2016, Defendant Hannah, who had just assumed the position of City Manager, hired Defendant Lee to be the City's HR Director. Pl. Ex. 6 ("Hannah Dep.") 23:1-20, ECF 104-6. Plaintiff, who served on Defendant Lee's interview panel, objected to the City hiring her, claiming that Hannan failed to conduct an adequate background check and failed to contact her references and previous employers. Pl. Ex. 1 ("Brooks Dep.") 255:1-4, ECF 104-1.

Lee had previously been the HR Director for the City of Sherwood. In 2012, Lee had a performance review by her supervisors at the City of Sherwood, who noted that her job performance was "unsatisfactory." Pl. Ex. 9, ECF 104-9. The review stated that Lee became "argumentative" during one incident, she expressed "unsolicited strong opinions" about candidates during the process of hiring a new City Manager, and she "has a reputation for not keep confidential information confidential. Pl. Ex. 9. The evaluation also noted that Lee "does an excellent job with training," "typically does a good job" with the citywide hiring process, and "has cooperative relationships and dysfunctional relationships with other City staff members." Pl. Ex. 9. There is no record of Hanan or anyone else at the City reviewing this performance evaluation before hiring Lee.

The City did contact at least three of Lee's references. Handwritten notes made by an unknown author describe comments from Defendant Lee's references named "Ron Ruecker," "Craig," and "Kristen." Def. Ex. 11, ECF 95-11. Comments include "even keeled," "good judgment, honesty, to the point," "patience wears thin," "very high expectations," "independent thinker, stands behind her beliefs," "does the right thing," and "good relationship w/ boss." Def. Ex. 11.

In December 2016, Defendant Lee and the City began the recruitment process to hire an assistant for the HR Department. SAC ¶ 21. The City hired Jennifer Ortiz in February 2017. SAC ¶ 22. Greg Patton, a close personal friend of Police Chief Casey, had also applied and interviewed for the position. SAC ¶ 21. After he did not get the job, Patton sued the City, alleging racial discrimination in the hiring process. Patton's attorney first sent a public records request in March 2017 and then sent a "tort claim and preservation notice" to the City on April 26, 2017. Def. Ex. 4, ECF 96-4. Defendant Stone emailed the preservation notice to Plaintiff, Hannan, and Lee and told them to "take whatever steps necessary" to preserve all relevant documents. Stone Decl. Ex. 1, ECF 90-1. While searching for documents to preserve, Plaintiff found an excel file, entitled "Applicant Tracking – HR Assistant.xlsx" that had been modified by Lee's user account three times after the new HR Assistant was hired. Pl. Ex. 25 ("Pl. Resp. Interrog.") at 6, ECF 104-25. One modification, made by Lee's user account, occurred on April 27, 2017, after the City had received the preservation notice for the Patton suit. *Id.* at 6. Plaintiff met with Stone and Hannan and requested permission to freeze Lee's access to the file and pull an older version of the file. *Id.* at 7-8. Stone and Hannan denied Plaintiff's request. On May 2, 2017, Stone emailed Plaintiff and reiterated that the IT team "should search for and retain any information which appears relevant to Mr. Patton's claim of discrimination in hiring." Pl. Ex. 13, ECF 104-13. In that same email, Stone stated: "You should not alter your procedures for system backups or archiving." Pl. Ex. 13. Stone confirmed this directive in a subsequent email, even after he was informed by an IT employee that his order would lead to overwriting of backup tapes and loss of historical data. Pl. Ex. 13. Plaintiff alleges that Stone's directive constituted an order for Plaintiff to allow the destruction of potential historical evidence contained on the

backup tapes, including an unmodified version of the Applicant Tracking – HR Assistant file. Def. Ex. 5 ("Brooks Dep.") 79:20-80:13, ECF 96-5.

Then, in May 2017, Plaintiff met with Newberg City Councilor Denise Bacon and told her about his concerns that the City Manager, HR Director, and City Attorney all contributed to the potential destruction of evidence for the Patton litigation. Pl. Resp. Interrog. at 10. Plaintiff also met with City Councilors Patrick Johnson and Stephen McKinney in December 2018 to convey these concerns about the City's failure to preserve documents. *Id.* at 10-11. Afterward, on December 8, 2017, Defendant Hannan met with Plaintiff and admonished him for "violating the chain of command" by speaking to City Councilors about his concerns. *Id.* at 11.

In July 2017, Defendant Lee reported to the City Public Works Department that a lock on an HR file cabinet had been broken. SAC ¶ 45. Lee told Defendants Stone and Hannan about the broken lock, but she did report it to the Newberg Police. SAC ¶ 45. In November 2017, Plaintiff learned about the broken file cabinet lock from the director of Public Works. Brooks Dep. 175:20-25. Plaintiff spoke with Defendant Stone, who confirmed that he knew about the incident. Brooks Dep. 333:13-18. Plaintiff then reported the broken lock incident to Police Chief Casey and Police Captain Jeff Kosmicki, who requested an investigation into the incident by the Oregon State Police. SAC ¶ 50. Sometime, in December 2017 or January 2018, Plaintiff discovered an email from Stone's assistant, Robin Steele, to Defendant Lee, which informed Lee that Plaintiff had reported the broken lock to police and stated: "It appears Brooks has inserted himself into the Patton matter." Brooks Dep. 115:4-116:19.

In January 2018, upon request from the Newberg Police Department, Detective Ted Moisan of the Oregon State Police opened an investigation into the broken lock incident. SAC ¶ 58. When she was interviewed as part investigation, Lee made a statement insinuating that Chief

Casey may have been responsible for the broken lock so that he could obtain information that would help his friend Patton with his litigation against the City. SAC ¶ 61. In September 2018, after the investigation was completed, Detective Moisan referred his report to the Yamhill County District Attorney, who declined to bring charges against Lee or anyone else. SAC ¶ 72.

Deposition testimony taken for the Patton lawsuit revealed that Plaintiff had exchanged text messages from his personal phone with a City Councilor about the modifications made to the Applicant Tracking – HR Applicant file. Stone Decl. ¶ 5, ECF 90. Plaintiff did not report or preserve these text messages as required by the Patton preservation notice. *Id.* Defendant Stone asked Defendant Hannan to investigate Plaintiff for failing to preserve the texts. SAC ¶ 75. In April 2019, Hannan repeatedly asked Plaintiff about the text messages, but did not launch an investigation. SAC ¶ 75; Brooks Dep. 404:7-18.

Also in April 2019, Newberg City Mayor Rick Rogers met with Chief Casey, Defendant Lee, Defendant Stone, and Plaintiff regarding intra-staff issues and asked each of them to sign a Workplace Conduct Agreement. Pl. Ex. 19, ECF 104-19; Pl. Ex. 20, ECF 104-20. The purpose of the Agreement was "to memorialize the level of civility and cooperation the City and the City Manager wishes to see among the Employees, and to develop a framework for future communications and interactions among them." Pl. Ex. 20. Plaintiff refused to sign the Agreement. SAC ¶ 76.

In May 2019, Defendant Lee filed a written complaint alleging harassment against Police Chief Casey, Police Captain Kosmicki, Plaintiff, and Defendants Stone and Hannan. Def. Ex. 3, ECF 96-3. The "Harassment" section of the City of Newberg Employee Manual provides: "All complaints of harassment will be investigated promptly and impartially." Def. Ex. 8, ECF 96-8. The City retained an outside investigator, Heather Martin, to conduct a formal investigation into

Lee's complaints against the five City employees, including Plaintiff. Def. Ex. 3. Plaintiff

received a "Respondent Notification," dated June 5, 2019, which informed him that he was a

subject of the investigation, and "[i]f these allegations are sustained, they will likely lead to

disciplinary action up to and including termination of employment." Pl. Ex. 17, ECF 104-17.

Martin completed the investigation and submitted her report to the City on October 22, 2019.

Def. Ex. 3. Among many other findings, the Martin Report found that Plaintiff did not make a

false police report or harass Lee when he reported the broken file cabinet lock. Def Ex. 3. The

Martin Report did find that Plaintiff had improperly disclosed confidential documents to City

councilpersons. Def. Ex. 3. But the Martin Report concluded that Plaintiff had violated no City

policies and, therefore, he was not subject to discipline by the City. Def. Ex. 3. On November 4,

2019, the City Council adopted the Martin Report. SAC ¶ 85. The City later issued press release

and published a redacted version of the Report. SAC ¶ 86; Pl. Ex. 18, ECF 104-18. The press

release included a quote from Defendant Clyne stating, "[t]here are personnel issues that need

addressing," but it did not mention Plaintiff by name. Pl. Ex. 18.

        In March 2018, Plaintiff met with Defendant Hannan and Chief Casey to discuss Plaintiff

doing some fill-in forensic work for the police department along with his IT job. Pl. Resp.

Interrog. at 15. From 2003 to 2012, before Hannan became City Manager, Plaintiff had

performed forensic work for the City on top of his IT role. *Id.* He received 5% "incentive pay"

during that time in addition to his IT salary. *Id.* In 2018, when he sought to perform forensic

work again, he asked Defendant Hannan for similar incentive pay. Plaintiff alleges that Hannan

promised that he would receive incentive pay for his forensic work, but Hannan denies making

such a promise. Brooks Dep. 231:8-232:8; Pl. Ex. 6 ("Hannan Dep.") 90:2-91:12, ECF 104-6.

When Defendant Clyne assumed the position of interim City Manager, he was unaware of any

agreement to provide Plaintiff with additional pay on top of his IT salary. Pl. Ex. 22, ECF 104-22. In November 2019, when Plaintiff asked Defendant Clyne about additional incentive pay, Clyne denied his request. Pl. Ex. 22.

Before leaving his interim City Manager position in February 2020, Defendant Clyne made a plan to hire an assistant City Manager and restructure the City departments. The restructuring eliminated IT as a director-led department and removed Plaintiff's director position with the City. Plaintiff remained employed in the IT department, his salary remained at the top of the range for an IT Director, and his salary and benefits were not reduced with this change. Brooks Dep. 196:10-18, 204:19-22.

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927–28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support its claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

Plaintiff has withdrawn his defamation claim against Defendant Lee. He has also withdrawn his equal protection claim against Defendants Lee and Stone. The claims that remain are a First Amendment retaliation claim against the City and all individual Defendants, a claim for equal protection against the City, Defendant Hannah, and Defendant Clyne, five state statutory whistleblower retaliation claims against the City, and tort claims against the City for intentional infliction of emotional distress and negligent hiring.

I.      **Claims Under 42 U.S.C. § 1983**

A.      **First Amendment Retaliation**

Plaintiff brings claims against all Defendants under 42 U.S.C. § 1983 for retaliation against his First Amendment right to free speech. Defendants move for summary judgment, arguing that Plaintiff failed to establish the necessary elements for his retaliation claim in the context of public employment.

"When a government employee exercises his protected right of free expression, the government cannot use the employment relationship as a means to retaliate for that expression." *Coszalter v. City of Salem*, 320 F.3d 968, 974 (9th Cir. 2003). The Ninth Circuit analyzes First Amendment retaliation claims in the public employment setting under the framework established

by *Pickering v. Board of Education*, 391 U.S. 563 (1968). Under *Pickering*, courts evaluate restraints on public speech by balancing "the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Oyama v. Univ. of Hawaii*, 813 F.3d 850, 860 (9th Cir. 2015) (quoting *Pickering*, 391 U.S. at 568). To establish retaliation by a public employer, a plaintiff must show that (1) they spoke as a private citizen and not in their official capacity as a public employee; (2) they spoke on a matter of public concern; (3) the plaintiff's protected speech was a substantial motivating factor in the employer's adverse action; (4) the employer did not have an adequate justification for treating the plaintiff differently than members of the general public; and (5) the employer would not have taken the adverse employment action absent the protected speech. *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009). The plaintiff bears the burden of proving the first three elements. *Id.* at 1070-71. If the plaintiff passes the first three steps, the "burden shifts" to the defendant to establish, based on the last two elements, that their "administrative interests outweigh the employee's First Amendment rights." *Id.* at 1071 (quoting *Thomas v. City of Beaverton*, 379 F.3d 802, 808 (9th Cir. 2004)).

Plaintiff alleges his protected speech against which Defendants retaliated include: (1) his reports to City Councilors that Defendant Lee modified the Applicant Tracking-HR Assistant file and that Defendant Stone allowed spoliation of evidence; (2) his reports to Newberg City Police about the alleged break-in to the HR file cabinet; and (3) his reports to Dr. Detective Moisan during the Oregon State Police investigation into the alleged spoliation and break-in.

As to the first element, Defendants argue that Plaintiff spoke in his capacity as a public employee rather than a private citizen when he reported allegations of misconduct to City

Councilors. Whether a plaintiff spoke as a public employee or a private citizen "presents a mixed question of law and fact." *Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1129 (9th Cir. 2008). "Where an employee has an official duty to speak, or his speech is the product of performing the tasks the employee is paid to perform, the speech is spoken in his capacity as a public employee." *Shepard v. City of Portland*, 829 F. Supp. 2d 940, 967 (D. Or. 2011). But if the employee's speech was not part of their official duties or tasks the employee was paid to perform, the employee spoke as a private citizen. *Freitag v. Ayers*, 468 F.3d 528, 544 (9th Cir. 2006).

Defendants rely on Plaintiff's deposition statement that, as a City employee, he believed he had a "duty" to report the misconduct he witnessed. But Defendants acknowledge that Plaintiff went outside the chain of command when he revealed alleged wrongdoing to City Councilors. *See Greisen v. Hanken*, 925 F.3d 1097, 1111 (9th Cir. 2019) (holding that an employee more than likely speaks as private citizen when they speak about their concerns to persons outside their chain of command). Revealing to City Councilors that City employees had manipulated and destroyed evidence related to a pending suit was not part of Plaintiff's official duties as IT Director. *See id.* (noting that when a public employee raises "broad concerns about corruption or systemic abuse," such complaints cannot reasonably be classified as within the job duties of the average public employee). Rather, Plaintiff satisfied his responsibility as a private citizen by bringing these alleged wrongful actions within the City government to light. *See Freitag*, 468 F.3d 528 ("[I]t was [the employee's] responsibility as a *citizen* to expose such official malfeasance to broader scrutiny.") (emphasis added). Plaintiff's statement that he had a "duty" to report misconduct does not show that his discussions with City Councilors fell within his official duties as a City employee. At minimum, Plaintiff raises an issue of disputed fact as to

whether he spoke as a private citizen. Thus, Plaintiff satisfies the first element of his First Amendment retaliation claim.

As to the second element, "[w]hether speech is a matter of public concern is a question of law, determined by the court[.]" *Greisen*, 925 F.3d at 1109. Speech involves a matter of public concern when it relates to "any matter of political, social, or other concern to the community." *Connick v. Myers*, 461 U.S. 138, 146 (1983). Speech that "seeks to bring to light actual or potential wrongdoing or breach of public trust" meets these criteria. *Id.* at 148. "Speech that concerns issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government merits the highest degree of first amendment protection." *Allen v. Scribner*, 812 F.2d 426, 431 (9th Cir. 1987) (internal quotation and citation omitted). But speech that involves "individual personnel disputes and grievances" is not a matter of public concern. *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983).

Defendants argue that Plaintiff does not provide sufficient evidence to support his allegations of wrongdoing within the City government. But whether Plaintiff can prove wrongdoing is not the issue. Plaintiff engaged in protected speech when he spoke to City Councilors about what he reasonably perceived to be spoliation of evidence by City employees. *See Thomas*, 379 F.3d at 809 ("Unlawful conduct by a government employee or illegal activity within a government agency is a matter of public concern."). Potential unlawful activity by Defendants Lee and Stone are matters of concern to the public. Plaintiff's spoke on a matter of public concern when he brought his concerns about unlawful activity to City Councilors.

Next, Plaintiff bears the burden of showing that his protected speech was a "substantial or motivating factor in the adverse action" taken against him by Defendants. *Greisen*, 925 F.3d at

1113. This third element "is purely a question of fact." *Eng*, 552 F.3d at 1071. But as a threshold

matter, Plaintiff must show that Defendants took some adverse employment action against him.

In other words, Plaintiff must show that he suffered a loss of some "governmental benefit or

privilege" in retaliation for his protected speech. *Hyland v. Wonder*, 972 F.2d 1129, 1134-35 (9th

Cir. 1992). "To constitute an adverse action, a government act of retaliation need not be severe

and it need not be a of a certain kind." *Coszalter*, 320 F.3d at 975. The relevant inquiry is

whether the employer has taken "action designed to retaliate against and chill political

expression." *Thomas v. Carpenter*, 881 F.2d 828, 829 (9th Cir. 1989).

      Plaintiff alleges that the adverse actions against by Defendants were: (1) an investigation

into allegations of harassment by Defendant Lee; (2) Defendant Hannan chastising him for

speaking outside the chain of command and "harassing" him for failing to preserve text

messages; (3) Defendant Lee excluding him from union bargaining meetings; (4) Defendants

Hannan and Clyne denying him previously promised "incentive pay" for forensic work he would

do in addition to his official job duties as IT director; and (5) Defendant Clyne removing him

from his Director level position. Plaintiff does not meet his burden of showing that these alleged

acts by Defendants were adverse employment actions against him.

      First, the "retaliatory investigation" alleged by Plaintiff was undertaken in response to a

formal written complaint of harassment by Defendant Lee. Defendant Lee submitted a written

complaint alleging that Plaintiff, Chief Casey, and Police Captain Kosmicki conspired to harass

her, Defendants Hannan and Stone failed to take appropriate action when she reported

harassment, and Defendant Hannan retaliated against her for reporting the harassment. The

City's "Harassment in Personnel Manual" states:

> If you believe that you have been harassed, have witnessed harassment or
> discrimination, violence at work, or suspect any violation of our policies, you must

immediately report the matter to your supervisor, the next management level or to the Human Resources Manager. The supervisor/HR Manager is responsible for ensuring that all complaints are promptly and thoroughly investigated without prejudice or retaliation.

Def. Ex. 12. Thus, when he received Lee's formal complaint, Defendant Hannan had a duty to investigate the complaint. The City engaged an outside investigator, who evaluated the conduct of Plaintiff and the other named City employees, including Defendants Hannan and Stone. After a thorough investigation, the investigative report concluded that Plaintiff had committed some wrongful acts but need not be subject to discipline. Plaintiff was not disciplined.

Plaintiff relies on *White v. Taylor*, No. 6:18-cv-00550-MK, 2020 WL 5649629 (D. Or. July 2, 2020), findings and recommendation adopted, 2020 WL 5649725 (D. Or. Sept. 22, 2020) to argue that merely subjecting an employee to an investigation can be adverse employment action. But in *White*, this Court found an adverse employment action where the employee, along with being investigated, was placed on administrative leave and ultimately terminated. *Id.* at \*14. Similarly, the Ninth Circuit found that a hospital had engaged in an adverse employment against a doctor when it not only investigated him, but also refused to rescind his resignation and filed a report with state and federal authorities that rendered him unemployable. *Ulrich v. City and Cnty. of San Francisco*, 308 F.3d 968, 977 (9th Cir. 2002). Neither White nor Ulrich support Plaintiff's contention that the City's investigation into Lee's harassment complaint, which resulted in no material consequences to Plaintiff, was an adverse employment action.

Plaintiff's claim that the investigation leading to the Martin Report was a retaliatory adverse employment action suffers from another problem—the investigation

was not directed solely at him. In fact, Lee's co-defendants Hannan and Stone were also subjects of the investigation. Thus, Plaintiff has not shown that the City's broad investigation into Lee's harassment complaint alone, without more, constitutes an adverse action on the part of the City or any of the individual Defendants.

Second, Plaintiff alleges that Defendant Hannan took an adverse employment action against him by admonishing him for speaking directly to City Councilors about his concerns over the City's failure to preserve evidence. On December 8, 2017, Defendant Hannan scolded Plaintiff for not following the chain of command. Plaintiff makes the threadbare allegation that during this conversation, Hannan "threatened" him with "discipline." But Plaintiff does not describe the threats or say what disciplinary action was threatened. Similarly, Plaintiff vaguely complains that Hannan "repeatedly questioned" him about deleting text messages relevant to the Patton lawsuit and threatened to initiate an investigation. Plaintiff was not subjected to an investigation over the deleted text messages, and no disciplinary action was taken against him. Plaintiff's nonspecific allegations against Defendant Hannan do not support his claim that either the City or Defendant Hannan took an adverse employment action against him in retaliation for exercising his First Amendment rights.

Third, Plaintiff claims that Defendant Lee excluded him from union bargaining meetings as a form of retaliation. Plaintiff again makes threadbare allegations and presents no facts to support his claim. Plaintiff does not explain whether he was barred from attending the meetings or simply not informed about them. Nor does Plaintiff state how many meetings he missed. Once Lee was told that she should include Plaintiff, he was invited to the meetings. Plaintiff also does not claim that the union bargaining meetings were part of his job duties. In addition, as Plaintiff and Lee were each the head of a City Department, they were co-equal employees. Because Lee

has no supervisory authority over Plaintiff, her individual actions cannot be an adverse action on the part of Plaintiff's employer.

Lastly, Plaintiff alleges that Defendant Clyne denied him incentive pay for outside work as a forensic investigator with the Newberg Police Department and removed him from his director level IT position. Plaintiff claims that, in May 2018, Defendant Hannan promised that he would receive additional incentive pay. Plaintiff never received the additional pay. Defendant Hannan denies making this promise, and Plaintiff presents no evidence of such an agreement. But even viewing the facts in the light most favorable to Plaintiff and accepting his allegations as true, Plaintiff cannot show that denial of this additional salary was an adverse employment action. When Plaintiff asked Hannan's successor, Defendant Clyne for the incentive pay, he admitted that Clyne was "probably not aware of" Hannan's alleged promise. Pl. Ex. 22. When Clyne assumed the role of interim City Manager, he had no duty to honor any promise made by his predecessor.

As to Plaintiff's removal from his director-level position, Plaintiff presents no evidence that restructuring within the City government was directed at him. Defendant Clyne formulated a plan to restructure the entire department, which would affect anyone who was hired to lead IT for the City, not just Plaintiff. Plaintiff concedes that he was not the only employee affected by the restructuring. Thus, Plaintiff does not show that Clyne took an adverse action directed at him. Nor can Plaintiff show causation—Clyne was not employed by the City at the time Plaintiff engaged in protected speech and was not hired as interim City Manager until more than two years later. Thus, even viewing the facts in his favor, Plaintiff cannot show that Defendant Clyne denying him additional incentive pay and restructuring of the IT Department were actions taken in retaliation against him for engaging in speech protected by the First Amendment.

Overall, the Court finds that the alleged adverse employment actions asserted by Plaintiff do not rise beyond trivial harms and would not be expected to deter an employee from engaging in protected speech. Employer actions "that cause no materially significant disadvantage" to the employee "are insufficient to establish the adverse conduct required to make a prima facie case of First Amendment retaliation." *Meyers v. Starke*, 420 F.3d 738, 744 (8th Cir. 2005). The actions by Defendants did not materially disadvantage Plaintiff and did not deter him from exercising his First Amendment rights. *See Coszalter*, 320 F.3d at 975, 976. Plaintiff continued to work as IT Director for the City until his department was restructured, he was never suspended or placed on probation, and he continued to receive the same salary and benefits. And even after he was admonished by Defendant Hannan, he continued to speak about the City's failure to preserve evidence and failure to report the file cabinet break-in. Plaintiff cooperated with the Oregon State Police investigation into these incidents and does not show that Defendants' actions deterred him from continuing to speak about his concerns.

Because Plaintiff cannot make the requisite showing that Defendants took an adverse employment action against him, he does not satisfy the third element of the *Eng* test, and his First Amendment retaliation claim fails. *See Dahlia v. Rodriquez*, 735 F.3d 1060, 1067 n.4 (9th Cir. 2013) (noting that failure to satisfy any one of the elements of the *Eng* test is fatal to a plaintiff's claim for First Amendment retaliation). Neither Plaintiff nor Defendants proffer any arguments as to the fourth and fifth elements of Plaintiff's First Amendment retaliation claim. Thus, the Court need not address these remaining *Pickering* balancing elements. The Court grants summary judgment for Defendants on Plaintiff's First Amendment retaliation claim.

### B.    Fourteenth Amendment Equal Protection Violation

Government action violates equal protection when it disadvantages some suspect class of persons or impinges upon a fundamental right protected by the Constitution. *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1 (1973). Federal courts will generally uphold challenged government action if it "neither burdens a fundamental right nor targets a suspect class . . . so long as it bears a rational relation to some legitimate end." *Romer v. Evans*, 517 U.S. 620, 631 (1996).

Plaintiff does not allege that he is a member of a suspect class. But Plaintiff claims that he was "subjected to treatment for his participation in protected activity which was different than other similarly situated employees." SAC ¶ 11. Plaintiff argues that when Defendant Lee made a complaint alleging harassment, Defendant Hannan and the City conducted a formal investigation. But Plaintiff claims that his complaints to Hannan about harassment did not lead to an investigation.

When an equal protection claim is premised on unique treatment rather than on a classification, the Supreme Court has described it as a "class of one" claim. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). A class-of-one equal protection claim may lie where "a plaintiff alleges she has been intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment." *Id.* But the Ninth Circuit has held that "[t]he class-of-one theory of equal protection is [a] constitutional area where the rights of public employees should not be as expansive as the rights of ordinary citizens." *Engquist v. Or. Dept. of Agric.*, 478 F.3d 985, 995 (9th Cir. 2007), *aff'd sub nom.*, 553 U.S. 591 (2008). The government as an employer has "far broader powers than does the government as sovereign," and the rights of public employees are limited as compared to ordinary citizens. *Id.* at

994 (quoting *Waters v. Churchill*, 511 U.S. 661, 667 (1994)). Thus, a "class-of-one theory of equal protection is inapplicable to decisions made by public employers." *Id.* at 996. Plaintiff's Fourteenth Amendment equal protection claim fails as a matter of law.

Even if Plaintiff could bring a "class-of-one" claim, he fails to show how he was treated differently from a similarly situated employee. Unlike Defendant Lee, Plaintiff never filed a formal harassment complaint. Plaintiff complained to Defendant Hannan that Lee was harassing him by "grilling one of his employees in an effort to dig up dirt on the IT Department, and Plaintiff in particular." Pl. Resp. 26, ECF 102. Defendant Hannan then addressed the issue with Plaintiff and Lee. The City did not conduct a formal investigation because Plaintiff did not bring a formal harassment complaint. Plaintiff's non-specific allegations do not show his right to equal protection was violated, even if such a claim were legally cognizable. The Court grants summary judgment for Defendants on Plaintiff's equal protection claim.

### C.    Qualified Immunity

Defendants Stone, Hannan, and Clyne each argue that they are entitled to qualified immunity on Plaintiff's constitutional claims. A defendant is entitled to qualified immunity if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald¸* 457 U.S. 800, 818 (1982). The qualified immunity analysis requires a court to address two questions: (1) whether the facts alleged or shown by the plaintiff establish a constitutional violation and (2) whether the right at issue was clearly established at the time. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The right must have been clearly established at the time of the defendant's alleged misconduct, so that reasonable official would have understood that what he or she was doing under the circumstances violated that right. *Wilson v. Layne*, 526 U.S. 603, 615 (1999).

Here, the facts do not establish that Plaintiff suffered a constitutional violation as to either his First Amendment retaliation claim or his Fourteenth Amendment equal protection claim. Because Plaintiff has not shown that his constitutional rights were violated, the Court need not address the second prong of the qualified immunity analysis. Because Defendants did not violate Plaintiff's constitutional rights, they could not have violated constitutional rights that were clearly established. Defendants Stone, Hannan, and Clyne are entitled to qualified immunity.

### D.    *Monell* **Liability**

Plaintiff asserts *Monell* liability against the City based on his First Amendment retaliation claim. For a municipality to be liable under 42 U.S.C. § 1983, a plaintiff must show that a municipal custom or policy caused the violation of their constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978) (holding that a municipality is a "person" subject to liability under § 1983 when it causes a constitutional tort through "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers"). The municipality itself must cause the constitutional deprivation and may not be held vicariously liable for the unconstitutional acts of its employees under a *respondeat superior* theory. *Id.*; *see City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (requiring "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation"). The Ninth Circuit has held that a plaintiff may establish municipal liability under *Monell* in one of three ways: (1) the government official "committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity," (2) "the individual who committed the constitutional tort was an official with final policy-making authority," or (3) "an official with

final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992) (citations omitted).

Plaintiff claims that (1) Hannan and Clyne were final policy makers for the City related to all employment matters and (2) Defendant's retaliatory investigation of Plaintiff was ratified by the City Council. But because Plaintiff cannot show that Hannan, Clyne, or the other individual Defendants violated his First Amendment rights, there can be no liability for the City under *Monell*. Thus, the Court grants summary judgment for the City on Plaintiff's *Monell* claim.

## II.    State Statutory Claims

Plaintiff brings five claims against the City under Oregon whistleblower laws. Oregon statutes prohibit employers from retaliating against employees who publicly reveal alleged wrongdoing. In moving for summary judgment, Defendants assert that these claims were not asserted within the required one-year statute of limitations. Defendants also argue that Plaintiff cannot establish a causal connection between his whistleblowing activity and the City's alleged retaliatory acts.

### A.    Statute of Limitations

Defendants assert that Plaintiff's third, fourth, fifth, sixth and seventh claims are time barred under Oregon Revised Statute ("O.R.S.") § 659.875, which provides that a civil action under O.R.S. 659A.885 must be commenced within one year of the alleged unlawful employment action. O.R.S. 659A.885 authorizes civil actions for unlawful employment practices under Oregon statute, including actions claiming violations of O.R.S. 659A.199 (prohibiting retaliation by an employer against an employee whistleblower), O.R.S. 659A.203 (prohibiting retaliation by a public or nonprofit employer against an employee whistleblower), O.R.S. 659A.218 (prohibiting a public employer from disclosing the identity of a whistleblower), and

O.R.S. 659A.230 (prohibiting retaliation against an employee who aids in criminal or civil proceedings).

Plaintiff filed this action on December 23, 2019. Therefore, the alleged unlawful employment practice that gives rise to Plaintiff's claims must have occurred on or after December 23, 2018. Plaintiff concedes that, as pled, his fourth claim under O.R.S. 659A.203(1)(a) falls outside the one-year limitation period. For that claim, the only alleged unlawful employment action was Defendant Hannan admonishing and threatening to discipline Plaintiff for disclosing Defendant's potential destruction of evidence to City Councilors. Plaintiff alleges Hannan chastised him and threatened him on December 8, 2017, which was more than two years before Plaintiff filed this action. Thus, Plaintiff's fourth claim is time-barred.

Plaintiff brings his sixth claim under O.R.S. 659A.218, which prohibits disclosure of a whistleblower's name without their consent. For this claim, Plaintiff alleges his whistleblowing activity was reporting the previously unreported file cabinet break-in to the Newberg Police. Plaintiff alleges that Defendant Stone's assistant, Robin Steele, contacted Defendant Lee and informed her that Plaintiff had reported the alleged burglary to police. Plaintiff claims this disclosure by Steele to Lee was improper and violated O.R.S. 659A.218. In his deposition testimony, Plaintiff admits that this disclosure occurred no later than January 2018, which is more than one year before he brought this suit. Thus, based on the facts presented by Plaintiff, his sixth claim is also time barred.

The timing of the alleged unlawful employment actions that form the basis of Plaintiff's third, fifth, and seventh claims are less clear. In his Second Amended Complaint, Plaintiff does not specifically allege which retaliatory actions form the basis for each of these claims. For his fifth claim, Plaintiff asserts that "Defendants threatened Plaintiff with discipline for Plaintiff's

disclosure to the City Council." SAC ¶ 134. As to his seventh claim, Plaintiff asserts that

"Defendants discriminated and retaliated against Plaintiff for the reason that Plaintiff, in good

faith, reported potential criminal conduct[.]" SAC ¶ 146. But in his brief responding to

Defendant's motions for summary judgment, Plaintiff explains the specific retaliatory actions he

claims Defendants took against him because of his protected activity under state law. These

include denying him incentive pay for additional forensic work, subjecting him to retaliatory

investigation, excluding him union bargaining meetings, and eliminating his position as IT

director. Each of these alleged retaliatory actions occurred on or after May 2019—less than one

year before Plaintiff filed suit. Thus, as argued in his response brief, Plaintiff's third, fifth, and

seventh claims are not time barred.

### B.    Claim under O.R.S. 659A.199 and O.R.S. 659A.203

O.R.S. 659A.199, under which Plaintiff brings his third claim for relief, provides that an

employer may not "discharge, demote, suspend or in any manner discriminate or retaliate against

an employee . . . for the reason that the employee has in good faith reported information that the

employee believes is evidence of a violation of a state or federal law, rule or regulation." O.R.S.

659A.199(1). Similarly, O.R.S. 659A.203(1)(b)(A), under which Plaintiff brings his fifth claim,

prohibits a *public* employer from taking "disciplinary action against an employee for disclosure

of information that the employee reasonably believes is evidence of a violation of any federal,

state, or local law, rule or regulation." O.R.S. 659A.203(1)(b)(A).

"To establish a prima facie case of retaliation under [O.R.S. 659A.199 or O.R.S.

659A.203], the plaintiff must demonstrate that (1) he was engaged in protected activity; (2) he

suffered an adverse employment decision; and (3) there was a causal link between the protected

activity and the adverse employment decision." *Brunozzi v. Cable Commc'ns, Inc.*, 851 F.3d 990,

998 (9th Cir. 2017); *Kozowski v. Nelson*, No. 6:18-cv-00275-MK, 2020 WL 4279568, at *7 (D. Or. Mar. 23, 2020). Courts analyze claims under O.R.S. 659A.199 and O.R.S. 659A.203 in the same manner as claims for First Amendment retaliation. *See Marable v. Nitchman*, 511 F.3d 924, 929 (9th Cir. 2009) (using substantially similar language to state the elements for a First Amendment claim against a public employer).

Plaintiff asserts that his protected activity was reporting to City Councilors the suspected misconduct related to Defendants' failure to preserve evidence for a pending lawsuit. O.R.S. 659A.199 and O.R.S. 659A.203 define an employee's protected activity as "reporting" or "disclosing" information that the employee "believes is evidence of a violation of any federal, state, or local law, rule or regulation." Plaintiff has shown that he believed Defendant's failure to preserve an unmodified version of the Applicant Tracking-HR Assistant file, after receiving a tort claim and preservation notice, violated city and state law. Thus, his disclosure to City Councilors was protected activity.

However, as with his First Amendment claim, Plaintiff presents no evidence showing that he suffered an adverse employment action. For these state law claims, Plaintiff asserts that Defendants retaliated by subjecting him to an investigation for harassment, excluding him from union bargaining meetings, denying him incentive pay for additional forensic work, and eliminating his director-level position. As with his First Amendment claim, Plaintiff fails to show that these were adverse employment decisions directed at him. Accordingly, the Court grants summary judgment for Defendants on Plaintiff's state statutory claims under O.R.S. 659A.199 and O.R.S. 659A.203 for the same reasons as for Plaintiff's First Amendment retaliation claim.

If Defendants had committed adverse employment actions against Plaintiff, determining whether there was a causal link to these actions from his protected activity is generally a question of fact. That said, courts have held that lack of temporal proximity can be a basis for dismissing claims alleging retaliation against a whistleblower. *See Biggs v. City of St. Paul*, No. 6:18-cv-507-MK, 2019 WL 4575839, at *14 (D. Or. Mar. 7, 2019) (noting that courts "have found gaps of 13 months between the protected activity and adverse action insufficient to establish causation"). Plaintiffs reported the suspected break-in of the HR file cabinet in November 2017, which led to an Oregon State Police investigation that was completed in April 2018. The City's investigation into Lee's harassment complaint, Plaintiff's exclusion from union bargaining meeting, denial on incentive pay, and restructuring of the IT Department all occurred on or after May 2019. Thus, even if Plaintiff had presented evidence of an adverse employment action, such action would be too remote in time from his protected activity and any potential causal connection is too attenuated to support Plaintiff's claims.

### B.    Claim under O.R.S. 659A.230

Plaintiff brings his seventh claim under O.R.S. 659A.230 which prohibits an employer from retaliating against an employee "for the reason that the employee has in good faith reported criminal activity against any person [or] . . . has in good faith cooperated with any law enforcement agency conducting a criminal investigation[.]" O.R.S. 659A.230(1). Plaintiff alleges his protected activity was "report[ing] potential criminal conduct to the Newberg Police Department, Department of Justice, and Oregon State Police" and "cooperat[ing] with the Newberg Police Department and the Oregon State Police's investigations into Lee's potential misconduct." SAC ¶ 146. The retaliatory acts that Plaintiff alleges are the same as those he asserts with his First Amendment retaliation claim and his other state statutory claims. Because

the Court finds that those alleged acts do not constitute adverse employment actions on the part

of Defendants, Plaintiff's claim under O.R.S. 659A.230 also fails.

For the reasons stated above, the Court grants summary judgment for Defendants on

Plaintiff's state statutory claims.

### III.    Tort Claims

Plaintiff brings two common law tort claims against the City of Newberg: a claim for

intentional infliction of emotional distress ("IIED") and a claim for negligent hiring based on

City's hiring of HR Director Anna Lee.

#### A.    Intentional Infliction of Emotional Distress

Under Oregon law, to succeed on an IIED claim, a plaintiff must show: "(1) the

defendant intended to inflict severe emotional distress on the plaintiff, (2) the defendant's acts

were the cause of the plaintiff's severe emotional distress, and (3) the defendant's acts constituted

an extraordinary transgression of the bounds of socially tolerable conduct." *Bibeau v. Pac. Nw.*

*Rsch. Found., Inc.,* 339 F.3d 942, 947 (9th Cir. 2003) (quoting *McGanty v. Staudenraus,* 321 Or.

532, 543, 901 P.2d 841, 849 (1995)). To prove intent, a plaintiff must show that the defendant

acted with the purpose of causing them severe emotional distress. *McGanty*, 321 Or. at 543-44.

But a plaintiff need not show that the defendant acted with a malicious motive; the intent element

is also satisfied if the defendant "knows that such distress is certain, or substantially certain, to

result from his conduct." *Delaney v. Clifton*, 180 Or. App. 119, 132, 41 P.3d 1099, 1108 (2002)

(internal quotations and citation omitted).

Plaintiff's IIED claim is based on the same conduct by Defendants as alleged in his First

Amendment retaliation and state employment retaliation claims. This conduct includes:

"ordering Plaintiff, by inaction, to allow evidence to be destroyed . . . repeatedly threatening

Plaintiff with investigations for protected activities . . . subjecting Plaintiff to a baseless and malicious investigation . . . publicly releasing a report containing false and defamatory information." SAC ¶ 150.

As to the first element of his IIED claim, Plaintiff presents no evidence that any of the alleged actions by Defendants were conducted with the intent to cause Plaintiff severe emotional distress. The City launched an investigation into conduct by Plaintiff and four other City employees after Defendant Lee made a formal harassment complaint. Plaintiff presents no evidence that the City conducted the investigation for the purpose of causing him severe emotional distress or with the knowledge that it would do so. Rather, facts show that the City commenced the investigation solely to follow-up on Lee's complaint, which it was required to do by City policy. The City engaged an independent investigator to complete a report, which implicated Plaintiff in some wrongful activity, but exonerated him of violating any City policy. Plaintiff faced no disciplinary action based on the findings of the investigation. The City released the findings to the public because "the Newberg City Council values transparency and believes the release is in the public interest." Pl. Ex. 18. The press release accompanying the report made no mention of Plaintiff. Thus, Plaintiff cannot establish that Defendants intended the investigation to cause Plaintiff severe emotional distress or knew that it would do so.

As to the third element, the City conducted the investigation in order to comply with its own policy. In the interest of maintaining transparency, the City Council had a legitimate reason to publicly release the report from the investigation. Thus, the Court finds no basis for Plaintiff's claim that Defendant's actions were extraordinary transgressions of the bounds of socially tolerable conduct. Because Plaintiff cannot establish the requisite elements for his IIED claim, the Court grants summary judgment for Defendants on this claim.

### B.    Negligent Hiring

In his tenth claim for relief, Plaintiff asserts that the City was negligent in hiring Anna Lee as HR Director. Plaintiff claims that the City's negligent hiring "caused a foreseeable risk to Plaintiff by exposing him to Lee's false and damaging allegations." SAC ¶ 167.

Under Oregon jurisprudence, "the more traditional duty-breach and proximate cause analysis in a common negligence claim are subsumed in the question whether the defendant's conduct resulted in a reasonably foreseeable and unreasonable risk of harm to a protected interest of the kind plaintiff suffered." *Piazza v. Kellim*, 360 Or. 58, 71, 377 P.3d 492, 500 (2016). Oregon courts have recognized that "an employer can be found negligent for hiring or retaining an employee." *Chesterman v. Barmon*, 82 Or. App. 1, 4, 727 P.2d 130, 131 (1986), *aff'd and remanded*, 305 Or. 439, 753 P.2d 404 (1988). The employer may be subject to liability if the employer "negligently plac[es] an employee with known *dangerous propensities*, or *dangerous propensities* which could have been discovered by a reasonable investigation, in a position where it is foreseeable that he could injure the plaintiff in his course of work." *Id.* (emphasis added). For the employer to be liable, the plaintiff must show that it was "foreseeable that the employee, in carrying out [her] employment, may pose an unreasonable risk of injury to others." *Id.*

Plaintiff alleges that the City was negligent in not conducting an adequate background check before hiring Lee. Plaintiff refers to one specific performance review from Lee's former employer that he alleges Defendants did not review. That evaluation noted that Lee's "job performance is unsatisfactory, that she became "argumentative" during one incident, and that she "has a reputation for not keep confidential information confidential." Pl. Resp. 33; Pl. Ex. 9. The evaluation also noted that Lee "does an excellent job with training," "typically does a good job" with the citywide hiring process, and "has cooperative relationships and dysfunctional

relationships with other City staff members." Pl. Ex. 9. Defendants argue that the City appropriately checked Lee's references before she was hired. Defendants present handwritten notes made by an unknown person that provide comments from three of Lee's references. Def. Ex. 11. Plaintiff asserts that Defendants background check was inadequate because none of the three references had been Lee's supervisors or had worked closely with Lee in her previous job.

Whether the hiring process was adequate is an issue of disputed facts that the Court cannot resolve on a motion for summary judgment. But Plaintiff's negligent hiring claim fails because he does not show how a more thorough background check would have uncovered any "dangerous propensities," which would have caused the City to decline to hire Lee. Although the performance evaluation presented by Plaintiff demonstrates that Lee's previous employer had some concerns about her job performance, it would not have alerted the city of foreseeable risk that Lee would commit a tort against Plaintiff. In a conclusory manner, Plaintiff alleges that the comments in her performance evaluation should have alerted the City that Lee would be a "dangerous employee." Pl. Resp. 33. Otherwise, Plaintiff points to no specific findings in the performance evaluation that created an unreasonable and foreseeable risk of harm to him.

Nor does Plaintiff show that Lee behaved dangerously in her role as HR Director at the City of Newberg or caused him any legally cognizable harm. *See Brennan v. City of Eugene*, 285 Or. 401, 405, 591 P.2d 719 (1979) ("To state a cause of action in negligence, [a] plaintiff must allege . . . some legally cognizable damage."). Plaintiff vaguely asserts that Lee made false and damaging allegations against him when she implicated him in her harassment complaint. But Plaintiff presents no evidence that the Lee's harassment complaint or the ensuing investigation caused him to suffer harm. Without the requisite showing of legal harm caused by Lee, Plaintiff

cannot show that the City is liable for negligently hiring her. Accordingly, summary judgment is granted for Defendants on Plaintiff's claim against the City for negligent hiring.

## CONCLUSION

For the reasons described above, the Court GRANTS Defendants' Motions for Summary Judgment [88][92][95].

IT IS SO ORDERED.


DATED:____May 30, 2022_____.



MARCO A. HERNÁNDEZ
United States District Judge